

April 28, 2017

<u>VIA ECF</u>

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
United States Magistrate Judge
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 E. State Street
Trenton, NJ 08608

Re:     *In re Insulin Pricing Litigation*, No. 3:17-cv-00699(BRM)(LHG)   ("*Insulin Pricing*")
        *Barnett v. Novo Nordisk Inc.*, *et al.*, No. 3:17-cv-1580(BRM)(LHG) ("*Barnett*")
        *Boss v. CVS Health Corp.¸ et al.*, No. 3:17-cv-01823(BRM)(LHG) ("*Boss*")
        *Christensen v. Novo Nordisk Inc., et al.,* No. 3:17-cv-02678(BRM)(LHG)("*Christensen*")

Dear Judges Martinotti and Goodman:

        We submit this letter application on behalf of the four firms that have alleged antitrust, RICO, and state unfair trade practice violations in the *Barnett* complaint and the *Christensen* complaint to support the appointment of Weitz and Luxenberg, and Berman DeValerio (together, "the WL/BD Team") as interim co-lead counsel pursuant to Fed. R. Civ. P 23(g).  By this letter, our firms also respectfully submit that the Court should consolidate ***all*** of the above-referenced insulin cases into ***one consolidated amended action*** because it makes no sense to litigate these cases as separate (even if coordinated) matters on behalf of the same putative class and risk potentially inconsistent results when the fact allegations arise from identical events, substantially similar claims and overlapping (albeit, not identical) parties.

I.      <u>INTRODUCTION</u>

        We jointly represent 18 diabetic plaintiffs from 13 states who have paid out of their own pocket for life-preserving insulin medication.  We have brought claims on behalf of these plaintiffs – and a putative class of similarly situated insulin consumers – who have been forced to pay excessive, anticompetitive insulin prices or risk their very lives as a result of Defendants' conduct. Indeed, one of our class representative plaintiffs, Mrs. Gilmore, was briefly hospitalized after rationing her insulin medication due to the excessive out of pocket costs that exceed her fixed monthly budget.

        In November of 2016, Senator Bernie Sanders and Representative Elijah Cummings wrote to the U.S. Department of Justice, expressing outrage over the dramatic price hikes of insulin, and

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 2

requested an investigation into possible collusion between insulin manufacturers.  Defendant Novo Nordisk reacted to the rising furor in late November by issuing a press release discussing the cause of insulin price hikes and the WL/BD Team's investigation of insulin pricing commenced shortly thereafter – before any firm filed an insulin related complaint in this or any other Court.  Our initial investigation determined that one of the most prominent factors in these price hikes was a series of bilateral, exclusionary rebate contracts entered between into the Manufacturer Defendants[1] and the PBM Defendants.[2]

    In a case that significantly affects the putative class with significant economic harm, if not potentially life-threatening outcomes, the chosen lead counsel has a fiduciary duty to the class not to "pull their punches."  And so, for example, where other firms have similarly identified the PBMs as participants in a RICO enterprise that led to the dramatic price increases for insulin, our *Barnett* complaint was the first complaint that named these PBMs as defendants.  Similarly, because the anticompetitive features of rebate agreements[3] entered between the Manufacturer Defendants and the PBM Defendants are a significant element of this case, the *Barnett* complaint alleges that these agreements and corollary conduct violate federal and state antitrust law.  Other firms initially pled such antitrust claims against the Insulin Manufacturers, but have dropped them.[4]

    The Interim Class Counsel ultimately appointed to lead these actions should be selected based in large part on whether they will name the PBMs as defendants alongside the Insulin Manufacturers in a single, consolidated complaint that includes antitrust causes of action.  Only class counsel willing to do so will be "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).  The WL/BD Team will.

    As detailed below, the WL/BD Team ably meets the requirements of Fed. R. Civ. P 23(g) and, we respectfully submit, should be appointed as co-lead counsel over a single consolidated

---

[1] "Manufacturer Defendants" or "Insulin Manufacturers" refer to Eli Lilly and Company ("Eli Lilly"), Novo Nordisk, Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S., LLC ("Sanofi").

[2] "PBM Defendants" or "PBMs" refer to Defendants Express Scripts, Inc. and Express Scripts Holding Company (collectively, "Express Scripts"), CVS Health Corp. ("CVS"), and United HealthGroup, Inc. and OptumRx, Inc. ("OptumRx").

[3] Even one of the Defendants in this action, Sanofi Aventis, just filed an antitrust lawsuit in this Court that rests on allegations that rebate agreements concerning EpiPens violate the antitrust laws and cause hyper-inflated retail prices of that product.  *Sanofi-Aventis U.S. LLC v. Mylan, Inc.,* No. 3:17-cv-02763-FLW-TJB, ECF No. 1, ¶ 92 (D.N.J. Apr. 24, 2017).  The gravamen of the lawsuit is that rebate agreements can have anticompetitive consequences that violate the antitrust laws.  Indeed, Sanofi-Aventis alleges in its lawsuit that a competing drug manufacturer has sharply raised its list prices in order to absorb the large rebates it contractually agrees to pay to PBMs and third-party payors for exclusive formulary placement.  Similar harms have been inflicted here, and justify the inclusion of similar antitrust claims on behalf of the class of insulin users in a consolidated amended complaint.  *See, e.g.*, *Christensen* Complaint, ¶ 150.

[4] *Compare Chaires v. Novo Nordisk, Inc. et al.*, No. 3:17-cv-00699, ECF No. 1, ¶¶ 293-303 (D.N.J. Feb. 2, 2017) (Count IV: Violations of Sherman Act)  with *In re Insulin Pricing Litig.*, No. 3:17-cv-00699-BRM-LHG, ECF No. 18 (Mar. 17, 2017)(amended complaint, not including Sherman Act cause of action).

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 3

insulin pricing action.  Alternatively, if the Court determines that a joint leadership structure should be drawn from across the several insulin plaintiff firms that have filed complaints, neither Weitz and Luxenberg nor Berman DeValerio object to being designated as co-lead counsel of a single consolidated matter in conjunction with other applicants deemed qualified by the Court.  Indeed, the firms representing plaintiffs in the other complaints are themselves among the most experienced and qualified in prosecuting complex class action cases, and we have worked in the past with nearly all those firms.  Furthermore, we have a long history of working civilly with opposing counsel, which in this action promise to be among the finest defense counsel in the nation.

## II.    WL/BD TEAM SUPPORTS CONSOLIDATION OF *ALL* INSULIN PRICING ACTIONS

"Rule 42(a) gives the district court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice."[5]  Here, the WL/BD Team, all of the Insulin Manufacturer Defendants and one of the three PBM Defendants (CVS/Caremark) all support full consolidation of the four pending insulin actions.

The remaining PBM Defendants do not support full consolidation of the cases, and instead, suggest that only the cases that name all of the PBM Defendants (*Christensen, Barnett* and *Boss*) should be consolidated.  Their position appears to be premised upon the mistaken notion that the parties or the claims in each action must be *identical* in order for consolidation of all actions to be warranted.  This is not the law.  "Although identity of the parties in multiple actions strengthens the case for consolidation under Rule 42(a), it is not required. A substantial common question of law or fact is enough."[6]  Moreover, "[c]onsolidation is not barred simply because the plaintiffs may be relying on different legal theories or because there are some questions that are not common to all the actions …."[7]

In this case, *every* plaintiff group has pleaded common questions of law and fact concerning the participation of all Defendants[8] in a civil RICO enterprise and related state consumer law claims, as well as common factual questions that support all of the other claims pleaded in each

---

[5] *Lewis v. Lipocine Inc.*, Civil Action Nos. 16-4009-BRM-LHG & 16-4067-BRM-LHG, 2016 WL 7042075, at *2 (D.N.J. Dec. 2, 2016) (Martinotti, J.) (internal quotation marks and citations omitted).

[6] Wright, Miller & Cooper, Fed. Prac. & Proc. Civ. §2384 (3d ed. 2017).

[7] *Id.*

[8] Even the *Insulin Pricing* plaintiffs have pleaded that the PBMs have participated in the civil RICO enterprises and have violated state consumer laws.  Even though they have pleaded the PBMs participation, they have not elected to take the next step and actually sue the PBMs.

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 4

complaint.[9]  These common legal and factual questions fully authorize consolidation under Rule 42(a).

Discretionary considerations also support full consolidation.  Most obviously, there will be tremendous reduction of duplication and corresponding gains in both judicial and party efficiency if discovery and motion practice are consolidated.  Dispositive motion briefing of a *single* consolidated complaint will unify the plaintiffs' presentation to the court, eliminate the risk that multiple plaintiff groups will take inconsistent positions on behalf of what is essentially the same putative class, and reduce the sheer volume of what would otherwise be duplicative sets of submissions by multiple plaintiff groups.  Similarly, full consolidation reduces the risk of conflicts in discovery between the parties.  And full consolidation will ensure that the position of the putative class is presented with one set of expert witnesses, as opposed to multiple sets of experts which – again – increases the chances of inconsistent positions being advocated on behalf of the same putative class.

Most significantly, the WL/BD Team has identified and pleaded multiple instances where the Manufacturing Defendants blame the PBM Defendants for the insulin price increases, and *vice versa.*[10]  Moreover, the WL/BD Team has set forth specific fact allegations showing that the actions of both the Insulin Manufacturers and the PBMs have caused the dramatic inflation of insulin prices.[11]

Given these facts, class counsel cannot adequately or fairly represent the class without naming the PBMs as defendants alongside the Insulin Manufacturers.  Should a consolidated case proceed without naming the PBMs as defendants, at a trial of that action the Insulin Manufacturers would likely tell a jury exactly what they are already publicly saying, that the PBMs are more blameworthy for skyrocketing insulin prices.  It presents the classic "empty chair" defense where the jury cannot accurately assign liability because vital actors are not there.[12]

Even worse, if the actions are not fully consolidated and somehow severed so that claims against the Insulin Manufacturers are tried separately from claims against the PBM Defendants, it is conceivable that each group of Defendants might be able to partially or fully avoid liability by blaming the other.  Avoidance of such inconsistent factual determinations similarly justifies consolidation.  *See Welch v. Cape May Cnty. Corr. Ctr.*, No. CV 15-8745(RMB-JS), 2016 WL 1600213, at *2 (D.N.J. Apr. 21, 2016) ("Specific factors to consider in consolidation are risk of

---

[9] *See Christensen* Complaint, ¶¶ 221-661; *Boss* Complaint, ¶¶ 374-512, 591-1053; *Barnett* Complaint, ¶¶ 194-634; *In re Insulin Pricing* Amended Complaint, ¶¶ 220-745.

[10] *See Christensen* Complaint, ¶¶ 144, 147, 149-150, 152-157.

[11] *See Christensen* Complaint, ¶¶ 129-157.
[12] The presence of joint and several liability for plaintiffs' asserted causes of action may not fully avoid this concern.  Nor is it enough to assign PBMs the role of third-party witnesses, as the PBMs would likely not be subject to trial subpoenas,  domiciled as they are beyond the 100-mile radius of the Court in Missouri, Minnesota and Rhode Island. *See* Fed. R. Civ. P. 45(c)(1).

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 5

possible confusion, risk of inconsistent adjudications of common issues of law and fact, burden on parties and witnesses, length of time required and relative expense.")

It is unclear why some plaintiffs' counsel are reluctant to name the PBMs as defendants when, in their own complaint, the PBMs are accused of being part of a corrupt racketeering enterprise, as "pivotal actors in drug payment and pricing system" who "hold the keys to the castle—access to the formularies established by the PBMs." *In re Insulin* Amended Complaint, ¶¶ 8, 220-345. It is apparent from the investigation by the WL/BD Team that there are grounds to allege that the PBMs and Insulin Manufacturers are *both* liable here.

## III.   THE WL/BD TEAM MEETS THE RULE 23(G)(1)(A) CRITERIA

### A.   Legal Standard

When there is more than one adequate applicant seeking appointment as class counsel, the court must appoint the applicant "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). The Rule provides a non-exhaustive list of factors a court "must" consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The WL/BD Team meet these criteria.

### B.   The WL/BD Team Has Conducted a Thorough Investigation to Identify Appropriate Claims and Defendants

The WL/BD Team investigated insulin pricing beginning in December 2016, sparked by a press release from defendant Novo Nordisk that sought to explain why it had been increasing its insulin prices. *See* "Our perspectives on pricing and affordability." *press.novonordisk-us.com/perspectives?item=1* (Nov. 30, 2016). That publication included a link to a pictorial representation and description of who exactly is harmed by direct exposure to the price increases, which WL/BD have included in the *Barnett* (¶ 12) and *Christensen* (¶ 16) complaints. Each of the plaintiff complaints, including the first-filed action, allege class definitions that mirror the Novo Nordisk description of which insulin purchasers are most injured by dramatic increases to insulin list prices: "Those exposed to list price include patients: without insurance; fulfilling coinsurance or deductible requirements; within the Medicare Part D coverage gap."

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 6

After months of investigation, the WL/BD Team filed *Barnett v. Novo Nordisk, Inc., et al.*, No. 3:17-cv-01580-BRM-LG on March 8, 2017.[13]  While it was not the first-filed complaint, it was the first to name the PBMs as defendants, and WL/BD is the only class counsel alleging antitrust causes of action based on bilateral contracts between individual Insulin Manufacturers and individual PBMs.[14]

The allegations in the complaints filed by WL/BD reflect extensive investigation and analysis, and demonstrate the firms' willingness to invest significant time and resources to prosecuting this case.  The WL/BD Team has retained and consulted with industry experts with insight into insulin pricing and PBMs' formularies.  Berman DeValerio's in-house investigators performed an investigation of potential collusion amongst PBMs and amongst Insulin Manufacturers.  Berman DeValerio mined defendants' SEC filings, earnings call transcripts, conference call transcripts, and analyst reports to uncover corroborating facts that are uniquely set forth in only the *Barnett* and *Christensen* complaints.  Additionally, we obtained Wholesale Acquisition Cost pricing data that no other firm has utilized, and performed independent economic analysis illustrating Drug Manufacturer Defendants' lock-step price increases that are graphically presented in our complaints.  *See, e.g., Christensen* Complaint, ¶ 124 (Figure 5), ¶ 127 (Figures 6-9).

### C. The WL/BD Team Has Extensive Experience Leading Class Actions and other Complex Litigation, Including in the Pharmaceutical Industry

**Weitz and Luxenberg**

The Weitz and Luxenberg attorneys who will be primarily responsible for the adjudication of this case are **Ellen Relkin, Paul F. Novak, Gregory Stamatopoulos,** and **Diana Gjonaj**.

Weitz and Luxenberg is a national AV-rated law firm of 90 attorneys and 300 support staff headquartered in New York City, with additional offices in Cherry Hill, Detroit and Los Angeles. Weitz has represented individuals, communities and classes across the country to obtain redress from corporate wrongdoing and the firm's attorneys have a long history of plaintiff representation in the pharmaceutical industry.  The firm is accustomed to participating in large, complex cases involving mass actions, statewide and/or nationwide class actions, and it has consistently met the financial obligations required of these types of cases.  The firm has the dedication, human and financial resources, and litigation experience to meet the challenges presented in this litigation. The firm's many accomplishments include significant settlements of class action or mass litigation including *In re: Actos (pioglitazone) Products Liability Litigation,* MDL No. 2299 (co-lead counsel in settlement of a $2.4 billion pharmaceutical products liability action); *In re Oil Spill by*

---

[13] The WL/BD Team filed a subsequent complaint alleging the same nucleus of facts on behalf of additional plaintiffs in *Christensen v. Novo Nordisk, Inc., et al.*, No. 3:17-cv-02678-BRM-LG on April 20, 2017.

[14] *See supra,* Footnote 3, concerning defendant Sanofi-Aventis' antitrust lawsuit filed this week that alleges that a rival drug manufacturer's payments to PBMs and other payers are anticompetitive restraints of trade.

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 7

the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, MDL No. 2179 (plaintiff steering committee participation in excess of $10 billion settlement); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., MDL No.1358 (plaintiff liaison counsel and lead litigation counsel for a settlement of $423 million); In Re: Stryker Rejuvenate Hip Stem Litigation, MCL 296 (plaintiff liaison and lead counsel negotiating settlement exceeding $1.5 billion).

Ellen Relkin is of counsel to Weitz & Luxenberg, P.C. in New York City and Cherry Hill, New Jersey where she has practiced for more than twenty years. She is certified by the New Jersey Supreme Court as a Certified Civil Trial Attorney. She has been elected as a "Super Lawyer" of New Jersey and New York as well as AV rated and selected for the Martindale-Hubbell Bar Register of Preeminent Women Lawyers. Ms. Relkin serves on the Executive Committee in the In Re: Invokana Products Liability Litigation, MDL No. 2750, and the Plaintiffs' Steering Committee in In Re: Xarelto (Rivaroxaban) Products Liability Litigation (MDL 2592) in the US District Court for the Eastern District of Louisiana.

She was appointed as lead counsel in the New Jersey In Re: Stryker Rejuvenate/ABG II Modular Hip Litigation MCL 296 and participated as a member of the negotiating team for a settlement compensating thousands of plaintiffs in an amount exceeding $1.5 billion. Ms. Relkin is co-lead counsel in the DePuy ASR MDL litigation. In that capacity she played a key role in negotiating the $2.5 billion settlement for 8,000 victims of the failed hip implant. She has also served as New Jersey Co-Liaison Counsel in In Re: Yaz, Yasmin, Ocella Litigation, Case Code No. 287, New Jersey Superior Court, Bergen County and as New Jersey Liaison Counsel in In Re: Stryker Trident Hip Implant Litigation, Case Code No. 285, New Jersey Superior Court, Atlantic County, and as a member of the Plaintiffs' Executive Committee of In Re: Ortho Evra Products Liability Litigation (MDL #1742). She was a member of the trial team in the landmark Vioxx case McDarby v. Merck, that obtained a $13.5 million verdict and successfully defended the compensatory verdict arguing the appeal before the New Jersey Appellate Division, 949 A.2d 223 (N.J. App. Div. May 29, 2008). Ms. Relkin is an elected member of the American Law Institute. She serves on the Board of Governors of the New Jersey Association for Justice and is the Vice President of the Roscoe Pound Civil Justice Institute. She also serves on the Board of Visitors of the University of California at Irvine Law School. She is a former chair of the Toxic, Environmental and Pharmaceutical Torts Section of the American Association of Justice.

Paul F. Novak recently joined Weitz and Luxenberg after 8 years as a partner heading the antitrust practice group at Milberg LLP and 15 years as an Assistant Attorney General in charge of antitrust enforcement and complex litigation for the Michigan Department of Attorney General. Mr. Novak sat on the National Association of Attorneys General ("NAAG") Prescription Drug Pricing Task Force and served as co-lead counsel on behalf of all 50 state attorneys general in the In re Cardizem CD Antitrust Litigation, MDL No. 1278 ($80 million pharmaceutical antitrust settlement); as lead counsel for the State of Michigan in the In re Lorazepam and Chlorazepate Antitrust Litig., MDL No. 1290 ($100 million pharmaceutical antitrust settlement) and the In re Buspirone Antitrust Litig., ($100 million pharmaceutical settlement). He was also appointed as co-lead counsel for the class in Blessing v. Sirius XM (S.D.N.Y No.09-10035) (Clayton Act merger

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 8

challenge with injunctive relief valued at $180 million). He is past chair of the NAAG Midwest Antitrust Enforcement Committee and the State Bar of Michigan Antitrust, Trade Regulation and Franchising Section.  His antitrust work has been featured in the *National Law Journal* on the "Plaintiff's Hot List."  He is routinely recognized as one of Michigan's Super Lawyers*,* as a Best Lawyer in DBusiness Magazine, as AV-rated by Martindale Hubbell, and as one of the top plaintiff antitrust lawyers in the nation by the Global Competition Review's *Who's Who in International Competition Law.* Mr. Stamatopoulos and Ms. Gjonaj are associates at Weitz and Luxenberg and, along with Mr. Novak, also previously litigated class action cases at Milberg LLP.

**Berman DeValerio**

The Berman DeValerio attorneys who will be primarily responsible for the adjudication of this case are **Todd A. Seaver**, **Jessica Moy** and **William O. Bass**, and other attorneys and professional personnel as required.

Berman DeValerio is a national law firm with forty attorneys, a team of in-house investigators, forensic accountants and other professionals in offices on both the east coast and west coast. The firm has litigated class actions in this District and in courts around the country for over thirty years, and has been appointed by courts to serve as lead or co-lead counsel in scores of complex antitrust, securities and consumer class actions. The firm regularly represents institutions, corporations and consumers in class and non-class litigation.

Mr. Seaver and Berman DeValerio were co-lead counsel representing health insurer Aetna in the first antitrust challenge to a "reverse payment" between a generic drug manufacturer and brand name drug manufacturer.  *In re Cardizem CD Antitrust Litigation,* 99-md-1278 (E.D. Mich.). The action resulted in a successful recovery of $80 million and a pioneering ruling in the appellate court which held that the brand name drug manufacturer's payment of $40 million per year to the generic company for the generic to delay bringing its competing drug to market was a *per se* unlawful market allocation agreement under federal and state antitrust laws. That victory for years shaped the ongoing antitrust battle over competition in the pharmaceutical market.

Mr. Seaver has additional experience as court-appointed lead or co-lead counsel in antitrust class actions, including lead counsel in *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 03-md-1532 (D. Me.), one of the largest antitrust actions in history; co-lead counsel in *In re Lithium Ion Batteries Antitrust Litig.*, 13-md-2420-YGR (N.D. Cal.), and *In re Online DVD Rental Antitrust Litig.*, 09-md-2029 (PJH) (N.D. Cal.) (Plaintiffs Steering Committee).

Mr. Seaver recently concluded a highly complex, non-class case that shows he will not shy away from litigating for his clients against entities others will not challenge in court.  Mr. Seaver led a groundbreaking case stemming from the 2008 financial crisis against the major credit rating agencies, Standard & Poor's and Moody's, in *California Public Employees' Retirement System v. Moody's Corp.*, No. CGC-09-490241 (Cal. Super. Ct. San Francisco Cty.). Mr. Seaver represented the nation's largest public pension fund, the California Public Employees' Retirement

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 9

System (CalPERS), in litigation that held the rating agencies responsible for negligent misrepresentations of complex structured finance instruments. Moody's and Standard & Poor's agreed to pay a total of $255 million to settle CalPERS' claim that "Aaa" ratings on three esoteric bond investments were negligent misrepresentations. The settlements rank as the largest recoveries from Moody's and S&P in a private lawsuit for civil damages, and resulted in an appellate ruling that rating agencies can be liable for negligent misrepresentations for their credit ratings.

Berman DeValerio has demonstrated that it is willing to commit the resources and time necessary to litigate a complex class action such as this one, as they have done in many cases. A firm resume is available at
http://www.bermandevalerio.com/images/pdfs/BD_Firm_Biograph_2017-04-27.pdf

Below are highlights of other relevant cases.

- ***Sullivan v. DB Investments Inc.*, No. 04-02819 (D.N.J.) (Chesler, J.).** Mr. Seaver and Berman DeValerio represented a class of diamond resellers, such as diamond jewelry stores, in this case alleging that the De Beers group of companies unlawfully monopolized the worldwide supply of diamonds in a scheme to overcharge resellers and consumers. The settlement included a cash payment to class members of $295 million and a comprehensive injunction limiting De Beers' ability to restrict the worldwide supply of diamonds in the future.

- ***In re Abbott Laboratories Norvir Antitrust Litigation*, Nos. 04-1511, 04-4203 (N.D. Cal.).** Berman DeValerio successfully prosecuted a class action on behalf of HIV/AIDS patients against Abbott Laboratories, alleging that the pharmaceutical giant violated antitrust and unfair trade practice laws by hugely inflating the price of Norvir, one of the essential drugs at the time for the nearly half million people living with HIV/AIDS, from $200 to over $1,000 per prescription. Plaintiffs were successful through summary judgment including the invalidation of two key patents based on prior art, while reversed in part on appeal in the Ninth Circuit. The case settled for $10 million.

**D.      The firms Cafferty Clobes Meriwether & Sprengel LLP ("CCMS") and Rago Law Firms also support the WL/BD Team proposal**

Attorneys with **Cafferty Clobes Meriwether & Sprengel LLP** (CCMS) also support the leadership application of the WL/BD Team. CCMS has offices in Chicago, Philadelphia, and Ann Arbor, and possesses its own extensive experience in antitrust class actions, especially with regard to the pharmaceutical industry. *See, e.g.*, *In re Prandin Direct Purchaser Antitrust Litig.*, Civ. No. 10-12141 (E.D. Mich.)($19 million settlement); *In re TriCor Indirect Purchaser Antitrust Litig.*, No. 05-360 (D. Del)($65.7 million settlement); *In re Relafen Antitrust Litig.* No. 01-12239 (D. Mass.)($75 million settlement); *In re Warfarin Sodium Antitrust Litig.*, MDL 98-1232 (D. Del.)($44.5 million settlement). They have been appointed lead counsel in these and other antitrust

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 10

class actions, including *In re Insurance Brokerage Antitrust Litig.,* No. 04-5184 (MDL No. 1663) with settlements aggregating over $270 million in this District.  Information concerning the cases in which CCMS attorneys have had a leadership role, including currently pending actions, is available on the firm's website: www.caffertyclobes.com.

Similarly, **Michelle Rago** has more than fifteen years of experience in class action litigation, and brings unique insight and expertise to the WL/BD Team.  After her first child was diagnosed with Type 1 diabetes, Ms. Rago left law firm practice to form a solo practice in 2004. For more than a dozen years, she has represented people with Type 1 diabetes in negotiations with insurance companies to obtain necessary diabetic supplies.  She has represented children with diabetes to obtain necessary services at schools to treat their diabetes. Ms. Rago serves as a member of the American Diabetes Association volunteer Legal Advocacy network.  Since 2002, she has served as faculty at ChildrenWithDiabetes conferences throughout the country, in the UK, Italy, and Canada.  Ms. Rago has served as a foster parent in Westchester County for children with diabetes and adopted a baby with diabetes ten years ago.  Her third child was diagnosed with Type 1 diabetes in 2015.  Michelle Rago's unique expertise with diabetes combined with her understanding of class action law makes her a valuable resource in the prosecution of this case.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the WL/BD Team respectfully requests appointment as interim co-lead class counsel of a single, consolidated action.

The Honorable Brian R. Martinotti
The Honorable Lois H. Goodman
April 28, 2017
Page 11


Respectfully submitted,

**BERMAN DEVALERIO**                          **WEITZ & LUXENBERG**
                                              *A New York Professional Corporation*


By: /s/ Todd A. Seaver                        By: /s/ Ellen Relkin
    Todd A. Seaver                                Ellen Relkin

Todd A. Seaver (*pro hac vice*)               Ellen Relkin (N.J. Attorney Bar
Jessica Moy (*pro hac vice*)                  #006691985)
William O. Bass (*pro hac vice*)              220 Lake Drive East, Suite 210
44 Montgomery St., Ste. 650                   Cherry Hill, NJ 08002
San Francisco, CA 94104                       Telephone: (212) 558-5500
Telephone: (415) 433-3200                     Email: ERelkin@weitzlux.com
Email: tseaver@bermandevalerio.com
        jmoy@bermandevalerio.com
        wbass@bermandevalerio.com              Paul F. Novak (*pro hac vice*)
                                              Diana Gjonaj (*pro hac vice*)
                                              Gregory Stamatopoulos (*pro hac vice*)
                                              719 Griswold, Ste. 620
                                              Detroit, MI 48226
                                              Telephone: (313) 800-4170
                                              Email: pnovak@weitzlux.com
                                                      dgjonaj@weitzlux.com
                                                      gstamatopoulos@weitzlux.com


cc:      Counsel of Record (via ECF or email)